UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON CLARK SIMS,<br><br>Plaintiff,<br><br>v.<br><br>L. BIRD, Warden; K. WILLEY, Fire Captain; M. CARRILLO, Correctional Counselor; Y. MENCIAS, Correctional Counselor; L. ROLTGEN, Parole Agent; G. JOSEPH, Parole Agent; HORMOZI, Correctional Officer; L. WALKER, Correctional Counselor; SHARPE, Correctional Counselor; Y. YANG, Correctional Counselor; S. ALATORRE, Parole Agent; and JAN or JOHN DOE, CDCR Employees,<br><br>Defendants. | Case No.: 23-CV-463 TWR (BLM)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*, AND (2) DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE**<br><br>(ECF Nos. 1, 6) |

Presently before the Court is pro se Plaintiff Nelson Clark Sims' Motion to Proceed *in Forma Pauperis* ("IFP"). (ECF No. 6, "Mot.")[1] For the reasons explained below, the Court **GRANTS** Plaintiff's IFP Motion and *sua sponte* **DISMISSES**

---

[1] Plaintiff was incarcerated until March 7, 2023. (*See* Mot. at 5.) He filed his Complaint on March 13, 2023. (*See* ECF No. 1.) While his Complaint states he is incarcerated, it appears, he drafted his Complaint while he was incarcerated and waited until he was released to file it with the Court.

1

**WITHOUT PREJUDICE** Plaintiff's Complaint (ECF No. 1, "Compl.") pursuant to the screening required by 28 U.S.C. § 1915(e)(2)(B).

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff requests leave to proceed IFP because he is "unable to pay the costs of these proceedings" and is "entitled to the relief requested." (Mot. at 1.) All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for a writ of habeas corpus, must pay filing and administration fees totaling $402.[2] 28 U.S.C. § 1914(a). A court may, however, in its discretion, allow a plaintiff to proceed without paying these fees if the plaintiff seeks leave to proceed IFP by submitting an affidavit demonstrating the fees impose financial hardship. *See* 28 U.S.C. § 1915(a); *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (2015). Although the statute does not specify the qualifications for proceeding IFP, the plaintiff's affidavit must allege poverty with some particularity. *Escobedo*, 787 F.3d at 1234. Granting a plaintiff leave to proceed IFP may be proper, for example, when the affidavit demonstrates that paying court costs will result in a plaintiff's inability to afford the "necessities of life." *Id.* The affidavit, however, need not demonstrate that the plaintiff is destitute. *Id.*

Plaintiff sufficiently demonstrates that paying court costs would hinder his ability to afford the necessities of life. Plaintiff declares that he has a monthly income of $200, $18 of which he receives as a disability payment, (*see* Mot. at 2), and that his monthly expenses are $220, (*see id.* at 5). He has no assets and has $39.00 in cash. (S*ee id.* at 2–3.) Additionally, he is unemployed, and does not anticipate any changes to his financial status in the next twelve months, (*see id.* at 2, 5). As Plaintiff's monthly expenses outweigh his monthly income, the Court **GRANTS** Plaintiff's IFP Motion.

/ / /

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

**INITIAL SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

## I.     Legal Standard

Because the Court has granted Plaintiff leave to proceed IFP, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must *sua sponte* dismiss Plaintiff's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (noting that 28 U.S.C. § 1915(e)(2)(B) is "not limited to prisoners").  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Courts construe pro se complaints liberally when evaluating whether the complaint states a claim.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  However, construing the complaint liberally does not entail adding "essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Pro se plaintiffs must still follow the Federal Rules of Civil Procedure.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

3

## II. Discussion

Plaintiff asserts four claims in his Complaint against eleven different Defendants involving three separate situations. (*See* Compl.) He seeks to bring these claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). (*See* Compl.) The Court addresses each claim below.

### A.     *Claim 1—Defendant K. Willey*

Plaintiff asserts that Defendant K. Willey violated his Eighth and Fourteenth Amendment rights after a fire broke out at Richard J. Donovan Correctional Facility ("RJD"), where Plaintiff was housed. (*Id*. at 7–8.) Plaintiff alleges that on July 4, 2021, when a fire broke out in his housing unit at RJD, Defendant Willey, a Fire Captain, made the decision to evacuate certain cells and inmates in the unit, but not to evacuate other cells and inmates, including Plaintiff. (*Id*. at 7.) As a result, Plaintiff alleges he was exposed to toxic smoke for two hours during which time his asthma flared up and he began coughing, breathing poorly, and experiencing chest pain. (*Id*. at 7–8.) He used his asthma inhaler, after which he used his C-Pap machine and covered his face under a blanket to try to facilitate access to cleaner air. (*Id*. at 8.) After two hours, the inmates who had been evacuated, were returned to their cells. (*Id*. at 7–8.) Plaintiff explains that because of this incident, he was unable to swallow medication and some foods, his C-Pap machine was damaged, he was exposed to an unknown substance, and his lungs suffered unknown damage. (*Id*. at 8–9.) In his Complaint, Plaintiff also notes that Defendant Willey authored a report explaining that a ventilation system was set up during the fire and the recommendation, at least for part of the housing unit, was to shelter in place. (*Id*. at 9.) Plaintiff explains that the report was not entirely truthful or accurate. (*Id*. at 9–10.)

#### 1.     Eighth Amendment

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the

United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). Here, Plaintiff seeks to bring § 1983 claims under the Eighth and Fourteenth Amendments.

The prohibition on the infliction of cruel and unusual punishment embodied in the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" and requires that "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302–03). The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety," meaning "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff sufficiently alleges a serious deprivation in that he asserts he was unable to breathe properly and was subject to toxic smoke for a two-hour period. Plaintiff, however, does not adequately allege that Defendant Willey knew of and disregarded a known risk to Plaintiff by evacuating some inmates and making the decision to ventilate Plaintiff's housing area and implement a shelter-in-place order rather than evacuate his section of the facility. Plaintiff's Complaint, at most, alleges Defendant Willey was negligent, which is not a cognizable Eighth Amendment claim. *See Farmer*, 511 U.S. at 835; *Wilson*, 501 U.S. at 297. The Court understands that Plaintiff disputes the factual accuracy of Defendant Willey's report, but nothing in the Complaint addresses Defendant Willey's state of mind. The Complaint fails to allege what information

Defendant Willey knew at the time of the fire and whether, in her decision making as the Fire Captain, she disregarded an excessive risk to Plaintiff's health and safety. Without any such factual allegations, Plaintiff's Eighth Amendment claim against Defendant Willey fails to state a claim and is therefore **DISMISSED WITHOUT PREJUDICE**.

### 2. Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985), *superseded by statute on other grounds*. A plaintiff can state an equal protection claim by setting forth facts that plausibly allege a defendant intentionally discriminated against him based on his membership in a protected class. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.").

Here, Plaintiff has not alleged that he is a member of a protected class. *See United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) ("[N]either prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes." (citation omitted)); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin, [and] sex" as examples of characteristics protected by the Equal Protection Clause). As a result, he also has not alleged that Defendant Willey discriminated against him based on any membership in a protected class.

In addition, an equal protection claim can be brought under a "class of one" claim where Plaintiff is treated differently than similarly situated individuals without a rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008) ("[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'" (quoting *Olech*, 528 U.S. at 564)). There are no

allegations in the First Amended Complaint, however, that plausibly suggest Plaintiff was arbitrarily treated differently than other similarly situated individuals. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("[T]he plaintiff in a 'class of one' case does not allege that the defendants discriminated against a *group* with whom []he shares characteristics, but rather that the defendants simply harbor animus against [him] *in particular* and therefore treated [him] arbitrarily."). Plaintiff was not the only one required to shelter in place instead of being evacuated, and there are no factual allegations that Defendant Willey harbored any animus against Plaintiff in her decision-making as the Fire Captain. Plaintiff's equal protection claim thus fails to state a claim and is **DISMISSED WITHOUT PREJUDICE**.

### B. Claim 2—Defendants Y. Mencias, M. Carrillo, and Hormozi

Plaintiff asserts that when he was housed at North Kern State Prison, healthcare staff maintained a list of Plaintiff's disabilities and they classified Plaintiff as high risk for contracting Covid-19, noting he should not be housed in a dorm setting with other inmates. (Compl. at 42.) He further claims that when he arrived at RJD from North Kern State Prison in March of 2021, healthcare staff authored a medical chrono that stated, "No dorm housing due to . . . elevated risk of contracting Covid[-]19." (*Id.* at 16 (original formatting omitted).) Plaintiff's use of a C-Pap machine, for example, placed Plaintiff at a higher risk of contracting and passing the virus. (*Id.*) When he first arrived at RJD, he was placed in quarantine, where he tested negative for Covid-19, and he was then placed on single cell status so he would not be housed with other prisoners. (*Id.* at 16–17.)

On April 7, 2021, Plaintiff alleges that Correctional Counselor Y. Mencias and Correctional Counselor M. Carrillo falsified a housing unit classification document resulting in Plaintiff's removal from single cell status and his placement in a dorm setting on November 16, 2021. (*Id.* at 17–18.) Plaintiff claims that Defendants Mencias and Carrillo falsified the classification document by reporting that Plaintiff had appeared before the Unit Classification Committee and by failing to list Plaintiff's medical

restrictions including his high risk of contracting Covid-19 and his lower bunk status. (*Id.* at 17.)  Plaintiff states "this ghost committee" only had two people present—Defendants Mencias and Carrillo—and that "this ghost hearing never took place." (*Id.*) Plaintiff further explains that Defendant Mencias never had any contact with Plaintiff before, during, or after "this ghost hearing." (*Id.*)

In November 2021, Plaintiff was housed in a dorm setting where he alleges other prisoners and correctional officers were not wearing masks, social distancing was not being implemented, and there were no proper cleaning supplies. (*Id.* at 18.) While in the dorm housing between January 10 and 21, 2021, Plaintiff noticed Correctional Officer Hormozi conducting searches of the building without wearing a mask and without changing his gloves after patting down inmates. (*Id.* at 19.) Plaintiff heard Defendant Hormozi sneezing, coughing, and sweating, and it was "clear to [Plaintiff] that something was off with him." (*Id.*) On January 21, 2023, Plaintiff was asked to submit to Covid-19 testing. (*Id.*) He then overheard someone state that several officers had tested positive for Covid-19. (*Id.*) Four days later, Plaintiff was notified that he had tested positive for Covid-19 and was placed in isolation in a gym facility to prevent the spread of the virus and to receive additional medical care. (*Id.* at 19–20.)

Plaintiff alleges that the gym facility where he stayed while he recovered from Covid-19 had inhumane living conditions: human feces clogged the toilets, which overflowed onto the floor, only two of eight showers were operable and only dispensed cold water, no daily cleaning or disinfectants were available, and there were no procedures in place to prevent further illness. (*Id.* at 20–21.)

### a.   Housing Classification

Plaintiff alleges Defendants Mencias and Carrillo violated the Eighth Amendment and the ADA when they falsified the housing classification document that was later used to house Plaintiff in a dorm setting rather than single cell. (*See* Compl. at 17–18.)

/ / /

/ / /

1. Eighth Amendment

As noted above, *see supra* p. 5, a "prison official cannot be found liable under the Cruel and Unusual Punishment Clause [of the Eighth Amendment] for denying an inmate humane conditions of confinement 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 837). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The Court acknowledges Covid-19 poses a substantial risk of serious harm. *See Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [Covid-19] poses a substantial risk of serious harm" to prisoners.) In situations such as this where the challenged "conduct is harmful enough to satisfy the objective component of an Eighth Amendment claim, whether it can be characterized as 'wanton' depends upon the constraints facing *the official*." *Wilson*, 501 U.S. at 303 (citation omitted). Because "only the unnecessary *and wanton* infliction of pain implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege deliberate indifference to his serious medical needs." *Id.* at 297 (internal quotation marks and citations omitted). "It is *only* such indifference that can violate the Eighth Amendment; allegations of inadvertent failure to provide adequate medical care, or of [negligence], simply fail to establish the requisite culpable state of mind." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff's only allegation regarding Defendants Mencias and Carrillo's states of mind is that all Defendants knew or should have known "about the increase of cases of [C]ovid-19 being spread at [RJD]." (Compl. at 14.) Plaintiff asserts that Defendants Mencias and Carrillo falsified a housing unit classification document by

falsely stating Plaintiff had appeared in front of a Unit Classification Committee, failing to list Plaintiff's key medical restrictions, including Plaintiff's single cell status due to his high risk of contracting Covid-19, and failing to list Plaintiff's lower bunk chrono.[3] These allegations do not suggest Defendants Mencias and Carrillo acted with deliberate indifference to the risk that Plaintiff would contract Covid-19.  These allegations do not suggest that those Defendants knew about Plaintiff's single cell status and deliberately disregarded the substantial risk Plaintiff would face if housed in a dorm setting. Plaintiff's Complaint is also insufficient for the Court to plausibly infer that Plaintiff contracting Covid-19 was caused by Defendants Mencias and Carrillo.  The Court thus **DISMISSES WITHOUT PREJUDICE** Plaintiff's Eighth Amendment Claim against Defendants Mencias and Carrillo for their alleged falsification of Plaintiff's housing unit document.

2.      Americans with Disabilities Act

In one sentence, Plaintiff alleges that "custody" took away his single cell status without medical staff approval and therefore violated the ADA.  Plaintiff though does not explain who violated his ADA rights or provide any information for the Court to plausibly infer that the California Department of Corrections and Rehabilitation ("CDCR"), who is not named as a defendant, intentionally or with deliberate indifference failed to provide meaningful access or reasonable accommodations to disabled persons. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001).  Plaintiff's explanation of his ADA claim relating to his single cell status is inadequate to state a claim and the Court thus **DISMISSES WITHOUT PREJUDICE** that ADA claim.

/ / /

/ / /

---

[3]      The exhibit Plaintiff provides relating to Defendants Mencias and Carrillo shows Defendant Mencias authored, and Defendant Carrillo, signed a "Classification Committee Chrono," that notes the following about Plaintiff's housing restrictions: "Ground floor – no stairs, Lower/bottom bunk only/DME: Hearing Aid, c-pap machine, mobility impaired disability vest, hearing impaired disability vest, knee braces, walkers." (ECF No. 1-3 at 62.)

b. Eighth Amendment—Failure to Protect from Covid-19

Plaintiff asserts Defendant Hormozi violated his Eighth Amendment rights by failing to protect him from contracting Covid-19 because Defendant Hormozi walked through his housing area without wearing a mask while coughing, sneezing, and sweating. (Compl. at 19.) A few days later Plaintiff tested positive for Covid-19 and he has suffered from the long-term effects of Covid-19. (*Id.* at 19, 22.) But as with Defendants Mencias and Carrillo, Plaintiff fails to allege any facts as to Defendant Hormozi's state of mind. Plaintiff's Complaint fails to allege facts showing Defendant Hormozi was deliberately indifferent to Plaintiff's health and safety as opposed to acting negligently. Without any allegations of deliberate indifference, Plaintiff's Eighth Amendment claim against Defendant Hormozi fails to state a claim. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim against Defendant Hormozi.

c. Eighth Amendment—Gym Living Conditions

Plaintiff further claims that the living conditions in the gym that housed Covid-positive inmates were inhumane. (Compl. at 20–21.) The conditions Plaintiff discusses are no doubt concerning, but Plaintiff has not identified anyone responsible for the conditions or stated against whom he is bringing this claim. *See Daley v. Pelayo*, No. 1:20-cv-01129-GSA-PC, 2023 WL 2696704, at *3 (E.D. Cal. Mar. 29, 2023) ("Plaintiff cannot state a claim against an individual Defendant unless he demonstrates in his allegations that the individual defendant, identified by name, ***personally and individually*** acted or failed to act, violating Plaintiff's rights. Plaintiff may not attribute liability to a group of defendants, but must 'set forth specific facts as to each individual defendant's' deprivation of his rights." (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988))). Plaintiff's inhumane conditions claim thus fails to state a claim and is **DISMISSED WITHOUT PREJUDICE**.

/ / /

/ / /

### C. Claim 3—Defendants Walker, Bird, Alatorre, Roltgen, Joseph, Sharp, and Yang

Plaintiff further contends that certain individual Defendants, along with the CDCR, Valley State Prison, and RJD violated the ADA by not providing Plaintiff meaningful access to the Male Community Reentry Program ("MCRP"). (Compl. at 25–26.) He explains that MCRP is "a voluntary program for eligible males who have 365 days of their prison sentence left to serve." (*Id*. at 27.) It allows eligible inmates to serve the end of their prison sentence in the community in lieu of confinement. (*Id*.) Plaintiff sought placement in the MCRP but ran into various issues, including confusion about where Plaintiff's legal residence was located. (*Id*. at 26.) Plaintiff met with RJD Correctional Counselor L. Walker, who told him that he did not qualify for MCRP placement. (*Id*. at 28.) If an inmate's last legal residence does not have an MCRP, an inmate is ineligible for MCRP placement unless an individual is approved for a supervised transfer to a County that has an MCRP. (*Id*. at 29.) If an inmate has a high violence risk assessment score, an escape history, potential immigration holds, custody misconduct, or has been released from a high security or psychiatric unit within the last year, he will not be eligible for an MCRP. (*Id*. at 29–30.) After Plaintiff met with Defendant Walker, Plaintiff alleges he lodged various requests and appeals and eventually he again met with Defendant Walker who helped Plaintiff fill out MCRP eligibility forms. (*Id*. at 28.) Plaintiff was unable to get into the MCRP and he later submitted more forms to Correctional Counselor Sharp and was cleared by a mental health practitioner for the program. (*Id*. at 32.) He was still unable to get into the MCRP and he further appealed the decision. (*Id*. at 33.)

In April 2022, Plaintiff was transferred to Valley State Prison where he began another round of inquiries trying to get into the MCRP. (*Id*. at 33.) He initially sent requests and forms to Correctional Counselor Yang, but Defendant Yang denied Plaintiff entry to the MCRP. (*Id*. at 33–34.) Plaintiff appealed this decision and was eventually told that his appeal was denied because his legal residence was Riverside County, which

does not have an MCRP. (*Id.* at 34.) Plaintiff then sent a letter to Valley State Prison Warden Bird, concerning the denial of his placement in the MCRP. (*Id.* at 35.) He also sent a form to Parole Agent S. Alatorre concerning his legal residence. (*Id.*) Defendant Alatorre authored a "Release Program Study Report" indicating that Plaintiff's primary residence was in Riverside County and his alternate residence was in San Diego County. (*Id.* at 31.) Correctional Counselor L. Roltgen and Parole Agent G. Joseph signed the report. (*Id.*) Plaintiff contends that these Defendants agreed "to make Plaintiff [h]omeless in Riverside County, knowing that he ha[d] a home, family support, and [a] strong support system in place in San Diego." (*Id.*) Plaintiff again wrote a letter to Defendant Bird concerning placement in the MCRP. (*Id.*) Plaintiff was never given access to the MCRP and his numerous appeals were continuously denied despite providing over thirty documents concerning placement in the MCRP, including his proper residence. (*Id.* at 35–38.)

Plaintiff asserts that he was treated differently that other similarly situated prisoners and that there "were clearly other reasons" why Plaintiff was denied entry into the program aside from the legal residence issue. (*Id.* at 37, 39.) As such, Plaintiff contends Defendants, along with the CDCR, RJD, and Valley State Prison violated the ADA. (*Id.* at 25–26.)

The ADA applies in the prison context. *See* 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154 (2006). "In order to state a claim under Title II of the ADA, [however,] a plaintiff must allege: (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'" *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).

///

Furthermore, Plaintiff may not pursue an ADA claim against the individual Defendants in their individual capacities. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities."). The CDCR can be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008); *see Marta v. CDCR*, No. 1:20-cv-00072-GSA-PC, 2021 WL 9772769, at *3 (E.D. Cal. July 15, 2021). But, here, because Plaintiff names only individuals as Defendants, and not the CDCR or a public entity, he fails to state an ADA claim upon which relief can be granted. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA."). Plaintiff has also not explained what disability he is referring to when he claims Defendants and the CDCR facilities denied him access to the MCRP because of his disability. Nor has Plaintiff alleged facts from which a plausible inference could be drawn that Defendants' actions were taken "by reason of his disability." *O'Guinn*, 502 F.3d at 1060. Plaintiff's ADA claim relating to the MCRP is thus **DISMISSED WITHOUT PREJUDICE**.

### D. *Claim 4—Cumulative Error*

Plaintiff asserts that "when you combine claims one, two, and three together, they establish one big claim or cumulative error/violation of Plaintiff's constitutional rights." (Compl. at 42.) Plaintiff then repeats each claim. For the same reasons each claim discussed above must be dismissed, this cumulative claim is also **DISMISSED**. In addition, the Court is not aware of the existence of a general cumulative error claim that is cognizable under § 1983. Plaintiff may be referring to a cumulative error claim made in petitions for writ of habeas corpus, *see Payton v. Cullen*, 658 F.3d 890, 893 (9th Cir.

///

2011) (discussing whether a habeas petitioner's sentence should be overturned because of cumulative error), but that type of claim is not transferrable to the § 1983 context.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint. Plaintiff has <u>sixty (60) days</u> from the date of this Order to submit an amended complaint correcting the deficiencies noted herein. The amended complaint must be complete by itself without reference to the original pleading. Defendants not named and any claim not re-alleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

*Failure to timely amend the Complaint will result in the Court's dismissal without prejudice of this case for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and failure to prosecute in compliance with a court order requiring amendment. See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: June 13, 2023

Honorable Todd W. Robinson
United States District Judge